UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SONORAN SCANNERS, INC. and <br> JOSEPH P. DONAHUE, <br>       *Plaintiffs* <br> <br> v. <br> <br> PERKINELMER, INC., <br>       *Defendant*. | ) <br> ) <br> ) <br> ) Civil Action No. 06-12090-WGY <br> ) <br> ) <br> ) <br> ) |

**DEFENDANT PERKINELMER, INC.'S MOTION TO STRIKE INADMISSIBLE TESTIMONY OF MESSRS. SHAVER, BOGEN AND COSTA**

Defendant PerkinElmer, Inc. moves to strike from the summary judgment record the inadmissible testimony of Norman L. Shaver, Norman Bogen and David Costa, in particular, paragraphs 3 (portions specified below), 4 (portions), 5, 6 and 7 of the Shaver Affidavit; paragraphs 3 (portions) and 4 of the Bogen Affidavit; and paragraphs 1-4 of the Costa Affidavit.  The grounds for this motion follow.

    1. <u>Shaver Aff. ¶¶3, 5-6:  Hearsay</u>.  Shaver's recollection of what he "heard…from the Los Angeles Times and Pennysaver" (Shaver Aff. ¶5), offered for the truth of the matter asserted, is classic inadmissible hearsay, and "cannot be considered on a motion for summary judgment." *S.E.C. v. Ficken,* 546 F.3d 45, 53 (1st Cir. 2008).[1]  Similarly, the Court must exclude Shaver's testimony of what "I was told by

---

[1] *See also Garside v. Osco Drug, Inc*., 895 F.2d 46, 50 (1st Cir.1990); 30 Charles Alan Wright & Kenneth W. Graham, *Federal Practice and Procedure: Evidence* § 6334 (1997) ("if testimony contains inadmissible hearsay, that hearsay cannot be relied upon in deciding the motion").  "It would be grossly inefficient to permit a claim to survive summary judgment on the basis of inadmissible hearsay, only to have the evidence excluded at trial." *Adams II v. Cousins*, 2009 WL 1873584, *5 (D.Mass. 2009).

MacDermid's head of sales…." Shaver Aff. ¶6. See also Shaver Aff. ¶3 ("a number of them [customers] complained to me about Mr. Antley").

2. <u>Shaver Aff. ¶¶3, 4, 6: Lack of Personal Knowledge</u>. Repeatedly, Shaver conjectures about what prospective customers thought: "this had the effect of turning off some customers" (Shaver Aff. ¶3); "the meeting ended with a frustrated customer who concluded that if our CTP machine performance was mirrored by our sales force that the machine was a piece of crap" (Shaver Aff. ¶4); "MacDermid, as other newspapers, assumed that the quality of a machine is reflected in the sales personnel/presentation" (Shaver Aff. ¶6); "people assumed that the PerkinElmer machine was of poor quality" (Shaver Aff. ¶6). Rule 56 (e) requires affidavits to be "made on personal knowledge." *See Bay State Savings Bank v. Baystate Financial Services, LLC*, 2007 WL 6064455, *4, *8 (D.Mass. 2007). Because Shaver "could not have actually perceived or observed that which he testified to," his testimony must be excluded. *Hallquist v. Local 276, Plumbers and Pipefitters Union, AFL-CIO*, 843 F.2d 18, 23 (1st Cir. 1988).

3. <u>Shaver Aff. ¶7: Inadmissible Opinion</u>. Shaver's opinion that "50 Flexo machines will have been sold from customers available in 2002-2003" (Shaver Aff. ¶7)[2] must be stricken for at least two reasons. First, Shaver's opinion was never disclosed in a Rule 26(a)(2)(B) report. Therefore, it cannot be considered.[3] Sonoran cannot avoid the

---

[2] Sonoran's Opposition to Summary Judgment (Docket No. 79, p. 11) mischaracterizes Shaver's testimony: "According to Norm Shaver, the sale of 50 machines during the contract period was lost. Shaver Aff. ¶7." Shaver does not opine that PerkinElmer would have sold 50 flexo machines from 2001 to March 2006. At best, he says there were flexo customers "available" in that time frame.

[3] Rule 37(c)(1) "requires the near automatic exclusion of Rule 26 information that is not timely disclosed." *Aumand v. Dartmouth Hitchcock Medical Center*, 611 F.Supp.2d 78 (D.N.H. 2009) (citing *Wilson v. Bradlees of New Eng., Inc.*, 250 F.3d 10, 90 (1st Cir. 2001)). "Exclusion is an appropriate sanction when the party offering an expert witness fails to provide necessary information about that expert's proposed testimony." *LeBarron v. Haverhill Cooperative School District*, 127 F.R.D. 38, 41 (D.N.H. 1989); *Bekaert Corp. v. City of Dyersburg*, 256 F.R.D. 573, 577-78 (W.D.Tenn. 1979) (excluding expert on the grounds

Rule's expert report requirement on account of Shaver's status as a former employee of PerkinElmer. Shaver relied on information he obtained after he left Sonoran's employ and after this lawsuit began. Shaver Aff. ¶7. Consequently, Sonoran was required to serve a Rule 26(a)(2)(B) report, which it never did. *Bekaert Corp. v. City of Dyersburg*, 256 F.R.D. 573, 577-78 (W.D.Tenn. 1979).

Second, Shaver's opinion does not meet the requirements of Fed. R. Evid. 702. Shaver asserts that, as of January 22, <u>2010</u> (the date of his affidavit), "there are 34 [flexo] machines installed <u>or soon to be installed in Europe</u> and six more <u>on the way</u>" and "[i]n the US there are 8 Flexo machines and 2 more <u>expected to be placed this year [2010]</u>." Shaver Aff. ¶7 (emphasis added). From these 50 current or anticipated machines in 2010, Sonoran (see footnote 3)—but not Shaver himself—takes a breathtaking, unexplained and implausible leap to conclude that those 50 could have been sold many years earlier. Id. Self-evidently, there is no rational or reliable basis for that argument. And even Shaver's more limited opinion—"50 Flexo machines will have been sold from customers available in 2002-2003—falls under Rule 702.

4. <u>Bogen Aff. ¶¶3-4: Hearsay</u>. Bogen's rendition of what Antley said to Bogen ("[Antley] said…" (Bogen Aff. ¶3, lines 10-11, 20-21)) and what Baxter said to Bogen ("Mr. Baxter told me…" (Bogen Aff. ¶3, lines 30-31, 35-38) is all inadmissible hearsay. Bogen's testimony that "Harte-Hankes (Pennysaver)…was willing to pay $250,000-$300,000 for the prototype" (Bogen Aff. ¶3), necessarily premised on an out-of-court statement presumably uttered by someone at Harte-Hankes, also comprises inadmissible

---

that his testimony would be based on opinions formed in anticipation of litigation and had not submitted an expert report).

hearsay. To the same effect is Bogen's statement "I am told by Joe Donahue…." Bogen Aff. ¶4.

    5.   <u>Bogen Aff. ¶4: Inadmissible Opinion</u>. In 2000, Bogen created sales projections, which he himself contemporaneously characterized as "B.S." Sonoran now offers Bogen's opinion that the sales number in those projections "was quite accurate," even though "I couldn't be sure of which of the potential customers would be the purchasers." Bogen Aff. ¶4. This opinion must be excluded because it was not disclosed as required by Rule 26(a)(2)(B). Bogen explicitly relied on post-lawsuit information in reaching his opinion. Bogen Aff. ¶4 ("I am told by Joe Donahue that each of the newspapers I listed has become a CTP user…."). Therefore, the requirements of Rule 26(a)(2)(B) applied. *Bekaert*, 256 F.R.D. at 577-78.

The opinion also fails threshold reliability under Fed. R. Evid. 702. The fact asserted by Bogen, based on hearsay from Donahue, i.e., that each of Harte-Hankes, the Cleveland Plain Dealer and Washington Post "has become a CTP user" (Bogen Aff. ¶4), does not reliably or credibly validate the 2000 "B.S." sales projections that Sonoran is now trying to revive. Bogen has not stated when Harte-Hankes, the Plain Dealer or Washington Post purchased CTP machines. If those sales took place in the past four years, outside the earnout period that ended in March 2006, they could have no conceivable bearing on Bogen's stale, 9 year-old projections. And even if some of those sales occurred prior to early 2006, they do not rescue Bogen's unreliable, outdated projections with respect to those or any other potential customers. Bogen's hypothetical numbers are also inherently flawed in light of Bogen's admission that he could not

4

reliably predict, at the time he made his 2000 forecast, which customers would purchase PerkinElmer CTP machines.

6. <u>Costa Aff. ¶¶1-4: Inadmissible Opinion</u>.  Costa opines that data gathered by State Street Consultants, Inc., which he in turn sold to Sonoran's counsel and Baier "at a fixed price," is "the most reliable" as compared to "Seybold and IFRA collected data." Costa Aff. ¶¶3-4.  Sonoran never disclosed Costa as an expert as required by Rule 26(a)(2)(A).  Consequently, his affidavit should be stricken in its entirety.  *Aumand*, 611 F.Supp.2d 78 (citing *Wilson v. Bradlees of New Eng., Inc.*, 250 F.3d 10, 90 (1st Cir. 2001)).

Respectfully submitted,

PERKINELMER, INC.

/s/ T. Christopher Donnelly
T. Christopher Donnelly (BBO # 129930)
tcd@dcglaw.com
Adam B. Ziegler (BBO # 654244)
abz@dcglaw.com
DONNELLY, CONROY & GELHAAR LLP
One Beacon Street, 33rd Floor
Boston, MA 02108
617-720-2880

Dated: January 29, 2010

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)**

I, Adam B. Ziegler, hereby certify pursuant to Local Rule 7.1(A)(2) that on January 29, 2010, I spoke with Edward T. Dangel, counsel for Sonoran Scanners, Inc. in a good faith effort to resolve or narrow the issues raised by the above motion.  We were unable to do so.

/s/ Adam B. Ziegler
Adam B. Ziegler

## **CERTIFICATE OF SERICE**

    I, Adam B. Ziegler, hereby certify that on this 29th day of January, 2010, I electronically filed the foregoing Defendant PerkinElmer, Inc.'s Motion to Strike Inadmissible Testimony of Messrs. Shaver, Bogen and Costa with the Clerk of Court using the CM/ECF system, which will send notification of such filing(s) to all counsel of record.

                                          /s/ Adam B. Ziegler
                                          Adam B. Ziegler